UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HUBBELL INCORPORATED, <br> A Connecticut Corporation and <br> HUBBELL BUILDING AUTOMATION, INC., <br> A Texas Corporation, <br><br>     Plaintiffs, <br><br> v. <br><br> THE WATT STOPPER, INC., <br> A California Corporation, <br><br>     Defendant. | Case No. 08-cv-616-LY |

**DEFENDANT'S MOTIONS IN LIMINE**

I.   **HUBBELL'S SUPPLEMENTAL RESPONSES OF MAY 27, 2011 TO INTERROGATORY NOS. 2, 3, AND 4**

Defendant The Watt Stopper, Inc. ("Watt Stopper") hereby moves to preclude any submission of, reference to, reliance upon, or argument in line with the supplemental responses of Plaintiffs Hubbell Incorporated and Hubbell Building Automation, Inc. ("Hubbell") to Interrogatory Nos. 2, 3, and 4 that were served on May 27, 2011.  These belated and prejudicial supplemental responses provide *entirely new contentions* as to the asserted Hubbell patents, including (i) new conception dates for two of the patents, (ii) new reduction to practice dates for all four of the patents, and (iii) a list of the products allegedly embodying the four patents, revised to omit Hubbell's prior contention that the '642 patent is embodied by the IWS products.

Hubbell's supplemental responses are unjustifiably late.  *See* Fed. R. Civ. P. 37(c)(1); 26(e).  The deadline for liability discovery in this case was February 4, 2011, and expert discovery on liability was completed as of April 22, 2011.  The deadline for all fact discovery was April 22.  Hubbell's supplemental responses were provided on May 27, 2011 – *months later*, *and less than two months before trial*.  Hubbell provides no reason for its belated supplementation and instead cites documents that were produced in *December 2010*, well before the close of liability discovery.  Hubbell's belated supplemental responses are also highly prejudicial and likely to confuse the jury.  The dates of conception and reduction to practice are critical for assessing validity of the patent over the prior art.  Watt Stopper and its expert relied upon Hubbell's previously provided contentions as to conception dates in developing their invalidity defenses.  In addition, Hubbell now seeks to revise its contentions as to the IWS products that embody the '642 patent in an obvious attempt to avoid an on-sale bar resulting from sales of such IWS products more than year before the patent's filing date.  Such self-serving belated amendments should not be tolerated.  Expert discovery is over, the parties are

preparing for a trial to begin in less than two months, and Watt Stopper cannot now address these dramatic new contentions for the jury. They should be stricken.

## II.     WATT STOPPER'S INVESTIGATION OF MYTECH PRODUCTS

Watt Stopper hereby moves pursuant to Federal Rules of Evidence 402 and 403 to preclude any reference to efforts by Watt Stopper to learn about MyTech products or technology, and any argument that any such efforts constitute knowledge of any MyTech patent or imply anything about the value of any MyTech patent.

Hubbell alleges that Watt Stopper willfully infringed the '143 patent, and points to Watt Stopper's efforts to learn about MyTech technology as evidence that it was aware of MyTech's patents, one of which (the '143 patent) is asserted by Hubbell in this case, and/or that it valued the MyTech technology. Ex. A (May 6, 2011 Roberts Report) at ¶¶ 25-27. Because the facts to which Hubbell points are irrelevant and do not support such conclusions, and furthermore would be highly prejudicial to Watt Stopper and confusing for a jury, Hubbell should not be permitted to present them or rely on them to make such arguments.

In particular, Hubbell points to testimony by Charles Hardin that Watt Stopper allegedly contacted him and sought to speak with him about MyTech's technology. *Id.* at ¶ 26. Hubbell also points to Watt Stopper's evaluation of a MyTech sensor. *Id.* at ¶ 27. As to Mr. Hardin, he indicated that no such discussion or meeting about MyTech's technology ever took place, and he was not sure if the person who contacted him was even a Watt Stopper employee. Ex. B (Hardin Tr.) at 31:16-32:6, 32:23-33:3. Thus, there is no evidence that any information was ever obtained in such manner, and no evidence as to what particular information was sought or why, let alone that the information pertains to the '143 patent. As to the evaluation of the MyTech sensor, it is unclear what technical information was sought or obtained, and there is no evidence that any information about the '143 patent was ever obtained. These are merely the efforts of a

company to legitimately learn about its competitor's products. This and similar irrelevant evidence may, however, lead the jury to believe that Watt Stopper did something wrong and to unjustifiably and unfairly infer that Watt Stopper knew of and/or valued the '143 patent. It should therefore be excluded.

**III.   DESIGN CHANGES OF WATT STOPPER'S ACCUSED PRODUCTS**

The Court should preclude Hubbell from introducing any testimony, evidence or argument intimating that any measures taken by Watt Stopper to redesign the Accused Products bear on the determination as to whether Watt Stopper infringed and/or willfully infringed any of the patents-in-suit.

Hubbell alleges that adaptive features in the Accused Products infringe certain claims of the '143 and '243 patents, and that Watt Stopper's removal of some but not all such features indicates the relative value of these claimed inventions. After this litigation began, Watt Stopper made a business decision, informed by its counsel, to remove some but not all adaptive features from its products. Ex. C (Joyce Tr.) at 235:23-241:12. Despite the fact that Watt Stopper's design changes are subsequent remedial measures that should not be used by Hubbell to prove culpability, Hubbell inappropriately relies upon the design changes in its expert reports as an indication of Watt Stopper's culpability.[1]

Rule 407 of the Federal Rules of Evidence prohibits exactly this. Fed. R. Evid. 407 ("When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove … culpable conduct…."). As courts in patent infringement cases have explained, "[t]he purpose of Fed. R. Evid. 407 is to create an incentive to take

---

[1] The documents subject to this motion *in limine* include the following: Ex D (WS115066-WS115070); Ex. E (April 1, 2011 Rebuttal Report of Victor Roberts) at ¶41.

measures which, had they been taken before, would have avoided the event which precipitated the litigation by preventing the use of evidence of such measures against the party taking them." *See, e.g., Vardon Golf Company, Inc. v. BBMG Golf Ltd.,* 156 F.R.D. 641, 652 (N.D. Ill. 1994) (citing David W. Louisell & Christopher B. Mueller, Federal Evidence § 163 rev. vol. 2 (1985)); *see also Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221 (Fed. Cir. 1995). In *Vardon*, the plaintiff sought to discover evidence of the third-party defendant's efforts to modify its product after learning of the patent at issue. 156 F.R.D. at 652. The court found that "[c]ulpable conduct" as used in Fed. R. Evid. 407 has a "scope broad enough to reach patent infringement actions," and held that the evidence of the defendant's product changes was inadmissible because it "falls squarely within the prohibition of Fed. R. Evid. 407" such that allowing such evidence "would create a disincentive for [the defendant] to discontinue the infringing conduct."[2] *Id*. at 652-53. As in *Vardon,* Watt Stopper's decision to voluntarily redesign its Accused Products after Hubbell filed suit "falls squarely within the prohibition of Fed. R. Evid. 407." *Id.*

## IV.   JAMES GAVNEY

Hubbell should be precluded, pursuant to the stipulated protective order as well as Federal Rules of Evidence 402 and 403, from directly or indirectly making mention of or

---

[2] Courts have invoked Rule 407 to exclude evidence of product changes in cases involving other types of intellectual property as well. *See GMC v. Keystone Automotive Indus., Inc.*, 453 F.3d 351, 357 n. 1 (6th Cir. 2006) (stating that the district court properly excluded evidence that defendant modified its product to remove disputed trademark as inadmissible evidence of subsequent remedial measures); *Avery Dennison Corp. v. Acco Brands, Inc.*, 1999 WL 33117262, *7 n.4 (C.D. Cal. Oct. 12, 1999) (evidence of defendant's packaging changes after being accused of trademark infringement not admissible to prove culpable conduct); *Trilink Saw Chain, LLC v. Blount, Inc.,* 583 F. Supp. 2d 1293, 1317 n.12 (N.D. Ga. 2008) (excluding evidence of defendant's voluntary discontinuance of allegedly infringing activity after plaintiff notified defendant of the alleged infringement); *Filtration Solutions Worldwide, Inc. v. Gulf Coast Filters, Inc.,* 2010 WL 415265, *3 (W.D. Mo. Jan. 27, 2010) (granting motion *in limine* to prohibit offering of any statement or evidence regarding subsequent measures to stop alleged false advertising as evidence of wrongdoing, or arguing or otherwise inferring that such actions are evidence of wrongdoing).

introducing evidence related to (i) James Gavney; or (ii) documents identifying or referring to James Gavney.  Such information is not relevant to the issues being tried and will only complicate the case, confuse the jury, and prejudice Watt Stopper.

James Gavney is a patent agent who has worked with Watt Stopper in the past and is familiar with its products.  After Hubbell filed its complaint in this action and Watt Stopper retained Fish & Richardson P.C. as its litigation counsel, Fish & Richardson P.C. directed Watt Stopper to meet with Mr. Gavney.  A meeting was held between Watt Stopper personnel and Mr. Gavney on September 24, 2008.  During the depositions of Watt Stopper employees, Hubbell's attorneys sought to introduce privileged documents related to this meeting as well as other privileged communications between Mr. Gavney and Watt Stopper personnel.  Pursuant to the parties' protective order, these documents were clawed back and destroyed.

Neither Mr. Gavney nor documents identifying or referring to him have any relevance to the issues the jury must decide in this patent infringement case.  Mr. Gavney was not deposed in this case and will not be a witness at trial.  His actions and communications are not relevant to infringement or validity of any of the asserted patents.  Even if such evidence were marginally relevant (which it is not), there is a danger that the jury could be misled into drawing unsupported and inappropriate inferences from Watt Stopper's interactions with Mr. Gavney related to infringement by Watt Stopper or validity of the Hubbell patents.  Such inferences would be highly prejudicial to Watt Stopper.

### V. PRIOR POSITIONS OF THE PARTIES OR PRIOR RULINGS BY THE COURT

Pursuant to Federal Rules of Evidence 402 and 403, the Court should preclude any reference to any prior positions taken or not taken by the parties, any prior rulings of the Court (including, without limitation, the substance of such rulings and which party "won" or "lost" such rulings), and any prior case history or procedure in this case.

The Court should exclude this evidence because it is irrelevant to the issues to be decided by the jury, namely, patent infringement and validity, and damages. All that matters is the law as articulated in the jury instructions and the relevant facts. Permitting the introduction of extraneous information related to prior positions or rulings would serve only to confuse the issues and distract the jury from the issues to be tried. *See QPSX Devs. 5 Pty Ltd. v. Juniper Networks*, 2007 WL 108508, *12 (E.D. Tex. Jan. 10, 2007) (ordering that the parties "may not refer, directly or indirectly, to each other's claim construction positions in the presence of a jury"); *Park West Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 324 (S.D.N.Y. 2009) (finding that "even if Defendants show that the Preliminary Injunction Ruling is relevant, any references to the Court's Preliminary Injunction Ruling are likely to unduly influence the jury").

Further, to the extent that the Court determines that such evidence has some marginal probative value, the Court should exclude such evidence because the probative value (if any) is substantially outweighed by the unfair prejudice and likelihood of confusing the jurors. For example, evidence of which party "won" or "lost" in prior rulings may inappropriately suggest that this Court favors one party's position over the other's position. Thus, the Court should not permit the introduction of such evidence.

## VI.   LOCATION OF PRODUCT MANUFACTURE AND CONTRIBUTION TO THE LOCAL ECONOMY

Hubbell should be precluded, pursuant to Federal Rules of Evidence 402 and 403, from introducing testimony, evidence or argument related to (1) the location where the accused Hubbell and Watt Stopper products are manufactured, and (2) Hubbell's contribution to the local economy in Austin. Such information is not relevant to the issues being tried and will only complicate the case, confuse the jury, and prejudice Watt Stopper.

Testimony or evidence regarding the fact that Hubbell manufactures some of its accused products in Austin, Texas is simply not relevant to proving any of the issues in dispute in this case. Similarly, the fact that Watt Stopper manufactures some of its accused products overseas does not tend to make any disputed fact more probable. *See, e.g., Arlington Industries, Inc. v. Bridgeport Fittings, Inc.* 2009 WL 2950644, at *1 (M.D. Pa. Sept. 9, 2009) (granting motion *in limine* to exclude evidence of manufacture in China, stating that such evidence "is irrelevant to prove willful infringement, or the computation of damages or reasonable royalty"). Likewise, testimony or evidence related to the number of Austin residents employed by Hubbell or Hubbell's contribution to the local economy is not relevant to any issue the jury must decide. *See id.* (excluding evidence regarding the number of local residents employed by the plaintiff). Furthermore, even if such evidence were marginally relevant (which it is not), there is a danger that the jury could be misled into believing that Hubbell's contribution to the local economy or the location of manufacture of the Hubbell or Watt Stopper products were somehow important to the issues to be decided. Such inferences would be highly prejudicial to Watt Stopper.

## VII. HUBBELL'S IMPROPER LEGAL ARGUMENT FOR THE '642 PATENT

The Court should exclude Hubbell's improper and unsupported legal argument that the steps of the asserted method claims of U.S. Patent No. 5,821,642 ("the '642 patent") must be performed in the specific sequence recited in order for the claims to be satisfied.

Whether a method claim requires steps to be performed in the order recited is a matter of claim construction and is therefore an issue of law. *See Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1371 (Fed. Cir. 2003) (reversing the district court's construction that the method claims at issue require a specific order). The law is well settled that "although a method claim necessarily recites the steps of the method in a particular order, as a general rule the claim is not limited to performance of the steps in the order recited, unless the claim explicitly or implicitly requires a

DEFENDANT'S MOTIONS IN LIMINE – Page 7

specific order." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008); *see also Altiris*, 318 F.3d at 1369 (stating that unless a claim itself requires steps to be performed in the order written or the specification directly or implicitly requires such a narrow construction, "the sequence in which such steps are written is not a requirement"); *Interactive Gift Exp., Inc. v. Compuserve Inc.,* 256 F.3d 1323, 1343 (Fed. Cir. 2001) ("Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one.").

During claim construction, Hubbell **never** argued that any of the asserted claims of the '642 patent requires a specific order. Instead, Hubbell raised this argument for the first time in opposition to Watt Stopper's motion for summary judgment of invalidity of the '642 patent. (D.I. 164 at 4.) Even there, however, Hubbell failed to provide any basis for its assertion. As such, the "general rule [that] the claim is not limited to performance of the steps in the order recited" applies, and the Court should exclude Hubbell's improper legal argument. *Baldwin*, 512 F.3d at 1345.

### VIII. HUBBELL'S DEFINITIONS OF A POSITA THAT ARE INCONSISTENT WITH THE AGREED DEFINITION

The parties agreed on a definition of a person having ordinary skill in the art ("POSITA") during claim construction. Hubbell acknowledged this fact in its opening *Markman* brief dated September 30, 2009:

> Hubbell and Watt Stopper agree that a person of ordinary skill holds "a bachelor's degree in Electrical Engineering, physics, or the equivalent, combined with a graduate degree in Electrical Engineering or at least two years of experience in either the circuit design or hardware/software development of automated lighting control systems, or the design or development of electronic circuits for devices used in building automation products."

(D.I. 62 at 2 n.1.) After the Court rendered its *Markman* Order, however, Hubbell asserted two different definitions of a POSITA that are inconsistent with the agreed definition. First, Hubbell's expert, Dr. Roberts, stated in his opening expert report that:

> A person of ordinary skill in the art, in relation to the asserted claims of the patents-in suit, would have at least a BSEE degree, and 3 to 5 years of experience in the design of electronic lighting controls or similar electronic devices; or an MSEE and two years experience in the design of electronic lighting controls or similar electronic devices. A person of ordinary skill in the art would also have a working understanding of the various types of electrical loads provided by commonly used light sources, including incandescent lamps, and fluorescent and high intensity discharge lamps operated by both magnetic and electronic ballasts.

Ex. F (March 11, 2011 Roberts Report) at ¶ 56.  Second, on May 27, 2011, Hubbell supplemented its interrogatory responses to apparently reaffirm its original, pre-claim construction definition of a POSITA:

> Hubbell contends that the level of ordinary skill in the art that would be sufficient to understand the subject matter that is disclosed in each of the Patents-in-suit. Such a person would likely have at least an undergraduate degree in Electrical Engineering (or equivalent experience thereof), several years of experience working with analog and digital circuits, as well as embedded processors and/or microprocessors including software and firmware, and an understanding of applicability thereof to switching relays and occupancy sensor technology.

Ex. G (Hubbell's May 27, 2011 Supplemental Response to Interrogatory No. 1).

Hubbell has not provided any explanation for suddenly changing the definition of a POSITA from the parties' agreed definition.  Indeed, despite offering a different definition, Dr. Roberts stated during his deposition that the parties' agreed definition was "reasonable" and did not dispute any part of that definition.  Ex. H (Roberts Tr.) at 44:19-45:13.  Accordingly, the Court should exclude any definitions offered by Hubbell that are different than the parties' agreed definition in order to avoid confusing the jury.

## IX.   WATT STOPPER PRODUCTS NOT ANALYZED IN DR. ROBERTS' REPORT

Throughout this litigation, Hubbell has taken the position that its complaints and infringement allegations are virtually limitless with respect to the Watt Stopper products accused of infringing Hubbell's patents, relying on vague terms such as "at least," "without limitation," and "substantially similar." *See, e.g.,* D.I. 114 at 2.  Such broad allegations are improper because

they fail to inform Watt Stopper as to what it must defend—particularly at this late stage in the litigation.  *See, e.g., Landmark Tech. LLC v. Aeropostale*, 2010 WL 5174954, *3-4 (E.D. Tex. March 29, 2010) (granting motion to dismiss because identification of "electronic commerce systems" was an "extremely vague identification" and "fails to inform [the defendant] as to what it must defend").  In order to give Watt Stopper fair notice of what products it should be prepared to defend at trial, the Court should exclude any further attempt by Hubbell to introduce additional Watt Stopper products as "accused products."  In particular, the Court should limit Hubbell's infringement allegations to the products that Dr. Roberts substantively analyzed in the expert reports that he prepared to date.

Dated:  June 3, 2011    Respectfully submitted,

FISH & RICHARDSON P.C.


By: */s/ Wing H. Liang*
    Katherine Kelly Lutton, pro hac vice
    CA No. 194971
    Email: lutton@fr.com
    Tamara Fraizer, pro hac vice
    CA No. 215942
    Email: fraizer@fr.com
    Wing H. Liang, pro hac vice
    NY No. 4523973
    Email: liang@fr.com
    FISH & RICHARDSON P.C.
    500 Arguello Street, Suite 500
    Redwood City, CA 94063
    Telephone: 650-839-5070
    Facsimile: 650-839-5071

    Alex Eaton-Salners, pro hac vice
    CA No. 239750
    Email: aes@fr.com
    FISH & RICHARDSON P.C.
    12390 El Camino Real
    San Diego, CA 92130
    Telephone: 858-678-5070
    Facsimile: 858-678-5099

    Betty H. Chen
    Texas Bar No. 24056720
    Email: bchen@fr.com
    FISH & RICHARDSON P.C.
    111 Congress Avenue, Suite 810
    Austin, TX 78701
    Telephone: 512-472-5070
    Facsimile: 512-320-8935


    Counsel for Defendant
    THE WATT STOPPER, INC.

## CERTIFICATE OF CONFERENCE

Counsel for The Watt Stopper, Inc. ("Watt Stopper") consulted opposing counsel regarding Watt Stopper's Motions in Limine. Counsel for Hubbell stated that it is opposed.

/s  Wing H. Liang

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 3, 2011 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(b)(1).

| | |
|---|---|
| Steven A. Fleckman<br>Zachariah Wolfe<br>Fleckman & McGlynn, PLLC<br>515 Congress Avenue<br>Suite 1800<br>Austin, Texas  78701-3503<br>fleckman@fleckman.com<br>wolfe@fleckman.com | Attorneys for Plaintiffs<br>Hubbell Incorporated; Hubbell Building Automation, Inc. |
| Lance G. Johnson<br>Alfred N. Goodman<br>Stan Torgovitsky<br>Roylance, Abrams, Berdo & Goodman L.L.P.<br>1300 19th Street, N.W.<br>Suite 600<br>Washington, D.C.  20036<br>ljohnson@roylance.com<br>agoodman@roylance.com<br>storgovitsky@roylance.com | Attorneys for Plaintiffs<br>Hubbell Incorporated; Hubbell Building Automation, Inc. |

/s/LisaMarie Hernandez
LisaMarie Hernandez